# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ADRIAN HARPER
    Petitioner-Defendant

v.                                           Case No. 13-C-0502
                                             (Criminal Case No. 08-CR-307)

UNITED STATES OF AMERICA
    Respondent-Plaintiff.

## RULE 4 ORDER

A jury convicted petitioner Adrian Harper of possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), and I sentenced him to 200 months in prison under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The Seventh Circuit affirmed his conviction on direct appeal. United States v. Harper, 662 F.3d 958 (7th Cir. 2011), cert. denied, 133 S. Ct. 45 (2012). Petitioner now moves to vacate his conviction under 28 U.S.C. § 2255.

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, I must conduct a preliminary review of the motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response . . . .

## I. BACKGROUND

At approximately 1:45 a.m. on September 17, 2008, while conducting crowd control outside a nightclub called "Questions," Milwaukee police officers Emmons and Hopgood heard approximately five gunshots. Emmons noticed smoke rising out of the passenger side of a

black pickup truck, which sped away. A startled bystander pointed at the truck and yelled, "That's the one right there." (Trial Tr. at 68.) The officers called for backup, pursued and then stopped the truck, ordering the driver, Terrence Harper (petitioner's cousin) to get out. The officers then ordered petitioner, who was seated on the passenger side, to get out of the truck. As petitioner exited, the officers heard two shell casings fall to the ground. Inside the truck, the officers found a .357 revolver with the handle facing the passenger side and the muzzle pointing toward the driver's side, suggesting that it had been set down by the passenger. The gun was "hot," meaning it had recently been fired. Officers also found a plastic bag containing shell casings inside the truck. Following his arrest, petitioner told a fellow inmate, Bryant Staffaroni, that he went to Questions to celebrate his brother's release from prison, and that he "busted up the air" – meaning he fired the gun into the air. (Id. at 188.) Petitioner also told Staffaroni that he hoped his cousin would "take the case" for him. (Id. at 179, 184.)

Petitioner went to trial with attorneys William Burke and Brian Mullins. Emmons and Hopgood testified as to their observations and the bystander's statement. Terrence Harper testified that he did not know who fired the shots but denied that it was him. The government called DNA and fingerprint experts, who testified that while they could not make findings in this case that was not unusual when dealing with guns, shell casings, and plastic bags. Finally, the government called Staffaroni, who recounted petitioner's statements to him. Petitioner rested without presenting as defense case.

The jury deliberated for about two hours before returning a verdict of guilty. Following the trial, petitioner requested a new lawyer, and I permitted Burke and Mullins to withdraw. Attorney Chris Donovan was then appointed to represent petitioner at sentencing and on direct appeal.

2

## II. DISCUSSION

**A.    Section 2255 Standards**

Section 2255 permits a federal prisoner to attack his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under this statute "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). The petitioner must demonstrate an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004).

Prisoners may not use § 2255 as a repeat of or a substitute for direct appeal. Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007). Claims not raised on direct appeal are barred from collateral review unless the petitioner can show good cause for failing to raise the issue earlier and actual prejudice based on the error alleged. Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002). The ineffective assistance of counsel may provide cause sufficient to excuse a procedural default, see Murray v. Carrier, 477 U.S. 478 (1986), and ineffective assistance claims may be raised for the first time under § 2255, see Massaro v. United States, 538 U.S. 500 (2003). However, because the court presumes that counsel is effective, a petitioner bears a heavy burden in making out a winning claim. United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002). The petitioner must show that his lawyer's

3

performance was objectively deficient, and that this deficient performance so prejudiced his defense that he was deprived of a fair trial. Shell v. United States, 448 F.3d 951, 954 (7th Cir. 2006).

The district court may deny a § 2255 motion without holding a hearing or requiring the government to respond if the motion rests on conclusory or speculative allegations rather than specific factual allegations. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005). In order for a hearing to be granted, the motion must be accompanied by a detailed and specific affidavit showing that the petitioner has actual proof of the allegations going beyond mere unsupported assertions. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996). The court may likewise deny summarily a § 2255 motion resting on factual allegations that are contrary to the record in the case. See Eaton v. United States, 458 F.2d 704, 706 (7th Cir. 1972); see also Cooper v. United States, 378 F.3d 638, 641-42 (7th Cir. 2004).

**B.    Analysis of Petitioner's Claims**

In his motion and supporting memorandum, petitioner raises numerous challenges to the manner in which his trial was conducted. Petitioner failed to present any of these claims on direct appeal, procedurally defaulting them for collateral review. Petitioner also contends that his lawyers provided ineffective assistance of counsel, including by failing to preserve the issues he now raises. For the reasons set forth below, none of petitioner's claims have merit, so he cannot show prejudice sufficient to overcome his procedural default or demonstrate ineffective assistance of counsel. See Sandoval v. United States, 574 F.3d 847, 850-51 (7th Cir. 2009). I address each of his claims in turn, in the order presented in his memorandum.

4

### 1. Due Process Claims

#### a. Transcription of Sidebars

Petitioner first argues that the court reporter failed to transcribe two sidebars (Trial Tr. at 95, 201), requiring that his conviction be set aside. Failure to comply with the Court Reporter's Act, 28 U.S.C. § 753(b), does not require automatic reversal, even on direct appeal. United States v. Nolan, 910 F.2d 1553, 1559 (7th Cir. 1990). In this case, petitioner waived any objection by acquiescing in the court's procedure. See id. Even if the issue is not waived, failure to comply with § 753(b) is reversible only if the defendant can demonstrate prejudice, id., which petitioner does not even attempt to do. At all events, the record refutes any claim of prejudice. The sidebar referenced at page 201 of the trial transcript concerned housekeeping and scheduling matters, as the following transcribed discussion makes clear. (Trial Tr. at 201-02.) Nothing of substance was discussed. The other instance petitioner cites wasn't a sidebar at all, but rather a discussion held off the record between the lawyers' redirect and re-cross examination. (Id. at 95.)

#### b. Defendant's Presence

Petitioner next argues that he was denied the right to be present during the two "sidebars" mentioned above and during two in-chambers proceedings, one during voir dire where the court and counsel discussed strikes for cause (Trial Tr. at 29), the other during the examination of Terrence Harper when defense counsel asked if the government had a prior statement (id. at 106). Petitioner is once again mistaken in assuming that reversal is automatically required if any trial proceedings are conducted without the defendant's presence. See, e.g., United States v. Smith, 230 F.3d 300, 310 (7th Cir. 2000); United States v. McCoy,

5

8 F.3d 495, 496-97 (7th Cir. 1993). Petitioner's right to confrontation was not implicated in any of these instances, as no witness or evidence against him was presented. See McCoy, 8 F.3d at 496. Nor were petitioner's due process rights violated, as the fairness of the proceeding was not thwarted by his absence. See id. at 496-97. As indicated above, neither of the two "sidebars" petitioner cites involved matters of substance. Petitioner fails to explain what he could have done or what he could have gained by attending the brief in-chambers discussions regarding strikes for cause and Terrence Harper's prior interview with the prosecutor during pre-trial preparations. See United States v. Gagnon, 470 U.S. 522, 527 (1985) ("Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending."). Finally, any violation of Fed. R. Crim. P. 43 was waived by the failure to object. See McCoy, 8 F.3d at 497.

### c. Personal Exercise of Strikes

Petitioner next argues that he was denied the right to personally exercise peremptory strikes. As he concedes, however, a defendant represented by counsel has no such right. United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996). Petitioner claims that Boyd is distinguishable because he asked his lawyers to provide him with the jury list so he could make his own strikes, but the lawyers refused. He further contends that his lawyers refused to follow his instructions to strike three specific jurors. But petitioner failed to protest during the trial; saying so now in an affidavit is too late. See Boyd, 86 F.3d at 723 (holding that such an unsupported assertion is too facile a tactic to be allowed to succeed).[1] Finally, contrary to petitioner's suggestion, there is no constitutional right to peremptory strikes. See, e.g., Ross

---

[1] Petitioner also contends that Boyd is bad law. The decision has not been overruled, so I cannot ignore it.

6

v. Oklahoma, 487 U.S. 81, 88 (1988).

### d. Harassment of Terrence Harper

Petitioner next argues that government agents harassed and intimated Terrence Harper to alter his testimony. However, aside from his own affidavit, in which he claims "upon information and belief" (Adrian Harper Aff. ¶ 20) that government agents pressured Terrence Harper, petitioner provides no support for the claim.[2] See Prewitt, 83 F.3d at 819 ("[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.") (internal quote marks omitted).

### e. Interview Notes

Petitioner contends that the government failed to timely provide notes of a pre-trial interview with Terrence Harper. However, he does not explain how this amounted to error, see United States v. O'Malley, 796 F.2d 891, 900-01 (7th Cir. 1986) (holding that a prosecutor's interview notes, which the witness did not adopt or approve, did not qualify as a statement under the Jencks Act); nor does he identify any prejudice from this alleged error.[3]

---

[2] At one point during his testimony, Terrence Harper said, "I felt like I was being harassed." (Trial Tr. at 106.) However, he did not elaborate, and petitioner does not now provide any explanation. Petitioner's theory at trial was that Terrence Harper possessed/fired the gun. As indicated, at trial Terrence Harper denied firing the gun but refused to testify that petitioner (his cousin) did so. Petitioner presents no evidence (e.g., an affidavit from Terrence Harper) suggesting that the police harassed Terrence Harper to modify his testimony. At all events, given Terrence Harper's refusal to inculpate petitioner at trial, it is hard to see how any pressure from government agents influenced his testimony.

[3] During his direct examination of Terrence Harper, the prosecutor referred to an interview two weeks prior to trial. Defense counsel requested a sidebar, indicating he did not have a copy of the interview. The prosecutor indicated that this was part of his pre-trial preparation, and that no report was prepared. (Trial Tr. at 106.) The prosecutor later provided defense counsel with "notes of Terrence -- of Terrence and our examination." (Id. at 132.)

7

### f. Procedural Due Process

Petitioner contends that the court violated his procedural due process rights by not engaging in a methodical, on-the-record inquiry to determine whether he wanted to waive his rights to exercise peremptory strikes or be present for sidebars and in-chambers proceedings. He provides no authority holding that such a colloquy was required.

### 2. Denial of Fair Trial (Sixth Amendment) Claim

Petitioner argues that because he was denied the right to personally use peremptory strikes to remove three jurors (numbers 3, 19, and 32) his Sixth Amendment right to a fair trial was violated. As indicated, a defendant has no right to personally exercise peremptory strikes, and petitioner provides no support for his claim that the three jurors he wanted to strike were biased against him.[4] Nor does he explain how my giving preliminary instructions to the jury panel while counsel made peremptory strikes prejudiced him.

### 3. Denial of Confrontation and Effective Cross-Examination Claims

Petitioner contends that he was not able to confront and cross-examine the bystander who pointed out the truck to the police and stated: "That's the one right there." (Trial Tr. at 68.) I addressed this issue pre-trial, ruling that this statement was not "testimonial" within the meaning of the Confrontation Clause. See Davis v. Washington, 547 U.S. 813, 822 (2006) (explaining that statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to

---

Counsel did not object to the timing of this disclosure or request an opportunity to recall Terrence Harper, who had just left the stand. Petitioner does not now demonstrate that anything in those notes would have permitted more effective cross-examination of Terrence Harper.

[4] I further address the juror issue in § II.4.h. of this decision.

8

enable police assistance to meet an ongoing emergency). The bystander made the statement spontaneously, rather than in response to police questioning, and her purpose in making the statement was to assist the officers in responding to the ongoing emergency presented by a fleeing suspect who just fired shots on a crowded public street. (Case No. 08-CR-307, R. 73 at 6-7.) Petitioner presents no basis for revisiting this issue.

Petitioner also contends that he could not cross-examine the "intern" and "analyst" referenced by DNA expert Jill McDonough during her testimony. McDonough tested evidence recovered from the truck – the gun, shell casings, and plastic bag – but could not detect any human DNA, which was not unusual in her experience with such items. She further testified (without objection) that while she did not keep statistics an intern did a compilation, finding that about 85% of the time they could not do anything with guns (Trial Tr. at 170), and one of the lab's other analysts concluded that it was not really worth testing shell casings (id. at 171). Petitioner's counsel was able to cross-examine McDonough regarding the tests she performed in this case and the bases for her opinions, including her personal experience in testing similar items. Her references to studies and compilations completed by others based on evidence seized in previous cases, which confirmed McDonough's own experience, did not violate petitioner's Confrontation Clause rights. See Williams v. Illinois, 132 S. Ct. 2221, 2243 (2012) (plurality opinion) (finding no confrontation problem with expert's reference to a report that "was not prepared for the primary purpose of accusing a targeted individual"); see also Fed. R. Evid. 703 (indicating that an expert may base an opinion on facts or data that the expert has been made aware of or personally observed; if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion, they need not be admissible for the opinion to be admitted).

9

In any event, given "the overwhelming weight of the evidence," Harper, 662 F.3d at 962, any error in admitting these brief references cannot be deemed harmful. See Sorich v. United States, 709 F.3d 670, 674 (7th Cir. 2013) (indicating that on collateral review an error will result in reversal only if it had a substantial and injurious effect or influence in determining the jury's verdict). As the Seventh Circuit noted on direct appeal:

> Smoke was billowing from the passenger side of the vehicle, where [petitioner] was seated; Hopgood heard casings fall to the ground when [petitioner] climbed out of the truck; and casings were later recovered from that exact spot. The gun was positioned in a way that indicated that the passenger, [petitioner], was the last person to hold it. Finally, as icing on the cake, the prosecution presented the testimony of another inmate to whom [petitioner] had allegedly confessed.

Harper, 662 F.3d at 962-63.[5]

Petitioner argues that his lawyer failed to effectively cross-examine Terrence Harper, but he does not specify what more counsel should have done. See United States v. Woody, 55 F.3d 1257, 1272 (7th Cir. 1995) ("Without a detailed explanation of the instances of his attorney's errors as well as their effect on the result, we cannot evaluate his Sixth Amendment claim."). He fails to describe what in the prosecutor's interview notes, referenced above, should have prompted counsel to ask more questions. He contends that counsel failed to ask about the manner in which Terrence Harper had been "harassed" by law enforcement, but he presents no evidence of such harassment. Nor does he elaborate what other facts and details counsel should have exposed.

### 4. Ineffective Assistance of Counsel Claims

Petitioner alleges that Burke and Mullins were ineffective in eight respects, Donovan in

---

[5]The government's fingerprint expert testified that in his experience he found latent prints on guns just 16% of the time. (Trial Tr. at 212.) Petitioner raises no challenge to this testimony.

10

seven.

### a. Research (Burke and Mullins)

Petitioner first argues that Burke and Mullins failed to research the relevant facts and law so as to zealously defend him, and that they caused numerous procedural defaults. A § 2255 petitioner must come forward with specific acts or omissions of his counsel that constitute ineffective assistance. Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010). Generalized assertions will not suffice. To the extent that petitioner blames Burke and Mullins for failing to raise the specific claims addressed above, he cannot show prejudice, for the reasons stated.[6]

### b. Transcripts of State Court Testimony

Petitioner next claims that Burke and Mullins failed to submit the transcript of Officer Hopgood's testimony in a previous state court hearing related to these events. In that state court hearing, Hopgood at one point testified that petitioner got out of the driver's side of the vehicle. In his opening statement, Attorney Burke indicated that Hopgood made a huge mistake at the state court hearing, apparently mixing up petitioner and his cousin Terrence Harper. (Trial Tr. at 52.) Burke later cross-examined Hopgood about this issue during the trial. Hopgood admitted that he made a mistake during the state court hearing, explaining that it was the result of human error. (Id. at 83-84, 94-95.) Because Burke cross-examined Hopgood with

---

[6]In his affidavit, petitioner alleges that Burke and Mullins failed to examine the "crime scene." (Adrian Harper Aff. ¶ 6.) Counsel obtained and played for the jury a video of the area (Trial Tr. at 57), and petitioner fails to explain how any further investigation of the scene could have made a difference at his trial. He avers that Burke and Mullins failed to investigate whether any security or surveillance cameras in the area captured what happened. (Adrian Harper Aff. ¶ 24.) However, petitioner presents no evidence that exculpatory video in fact exists; speculation about missing evidence will not suffice. See U.S. ex rel. McCall v. O'Grady, 908 F.2d 170, 173 (7th Cir. 1990).

11

the relevant portion of the transcript, reading it for the jury, and Hopgood admitted his prior (mistaken) testimony, Burke did not perform deficiently by failing to also move the transcript into evidence. The jury was able to consider this issue in weighing Hopgood's credibility.

### c. Defense Witness

Petitioner argues that his lawyers failed to subpoena Willie Williams to rebut Staffaroni's testimony. In his affidavit, petitioner claims that Williams would have testified that he (Williams) was frequently in petitioner and Staffaroni's presence, and petitioner never made any incriminating statements to Staffaroni. Petitioner further avers that Williams knew that Staffaroni only heard rumors about petitioner's case. However, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted). Petitioner presents no affidavit or other statement from Williams; indeed, he admits that he cannot locate Williams. Even accepting petitioner's summary of Williams's proposed testimony, he cannot show prejudice. Petitioner's claim that Williams was "frequently" in his presence does not reasonably negate the possibility that petitioner and Staffaroni spoke on other occasion(s) when Williams wasn't around. Nor does petitioner explain the basis for Williams's knowledge that Staffaroni heard rumors about the case or how Williams's knowledge would have been admissible at trial.

### d. Effective Cross-Examination

Petitioner argues that counsel failed to perform effective cross-examination of Terrence Harper. However, as discussed above, he fails to specify what counsel should have done

12

differently.[7] Counsel vigorously cross-examined Terrence Harper about the improbability of his testimony that he did not know who fired the gun. Petitioner also contends that counsel failed to protect his confrontation rights regarding the "hearsay" evidence from the bystander and the intern mentioned by McDonough. Counsel <u>did</u> challenge the admission of the bystander's statement, prior to and during the trial. (Case No. 08-CR-307, R. 21; Trial Tr. at 68.) As explained in my pre-trial ruling (R. 73), the statement was admissible; petitioner makes no effort to show that my ruling was incorrect. And, as discussed above, petitioner cannot show prejudice based on McDonough's reference to the intern's compilation.

### e. Gunshot Residue Testing

Petitioner argues that his lawyers failed to obtain forensic gunshot residue testing on a pair of gloves recovered from Terrence Harper's truck. In his affidavit, petitioner states: "I believe the presence of gunpowder residue on the gloves would have contributed to raising a reasonable doubt as to whether it was me . . . that possessed and fired the gun." (Adrian Harper Aff. ¶ 23.) In order to establish prejudice based on counsel's failure to test this

---

[7]In his affidavit, petitioner states that Burke and Mullins failed to subpoena Terrence Harper as a defense witness (Adrian Harper Aff. ¶ 9), but he fails to explain why who called Terrence Harper mattered. Terrence Harper appeared at trial and was subject to examination by the defense. Petitioner further avers that counsel failed to interview Terrence Harper prior to trial and thus did not know that he was "harassed" by law enforcement. (Adrian Harper Aff. ¶ 9.) Petitioner presents no evidence of this harassment. Attorney Burke conducted a vigorous cross-examination of Terrence Harper, pointing out the absurdity of his claim that he did not know who fired the gun. However, the other evidence, including the officers' observations of smoke coming from the passenger side of the truck, the shell casings that fell from petitioner's lap, and the positioning of the gun inside the truck, made the defense theory that Terrence Harper possessed/fired the gun an exceedingly difficult one to accept. Petitioner argues that counsel failed to reveal Terrence Harper's bias or motive to alter his testimony or lie for the government, but he fails to specify how counsel could have done so. Further, as discussed in n.2, <u>supra</u>, Terrence Harper's testimony was not all that helpful to the government, as he refused to identify petitioner as the shooter.

13

evidence, petitioner must supply sufficiently precise information regarding what the omitted testing would have produced and how the results could have aided his defense. See, e.g., United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002); Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Speculation that the gloves might have contained gunpowder residue will not suffice.

### f. Failure to Explain Constitutional Rights

Petitioner argues that his lawyers failed to adequately explain his constitutional right to testify. In his affidavit, petitioner avers that he told Attorney Burke that he wanted to testify, and Burke responded, "You cannot testify, you have too many prior convictions."[8] (Adrian Harper Aff. ¶ 33.) Petitioner avers that he misunderstood this to mean that he was disqualified by law from testifying due to his record. Only after he got to prison did he discover that he had a constitutional right to testify.

The Seventh Circuit has held that a defendant who claims he was prevented from testifying by his lawyer must present more than his own self-serving affidavit. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) ("Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim."). Petitioner presents no such support here. To the extent that petitioner claims, not that his lawyers prevented him from testifying, but that they misled him about whether he could exercise his right given his prior convictions, his claim is not plausible in light of the record in this case. At a pre-trial

---

[8]Prior to trial, I ruled that the government could under Fed. R. Evid. 609 cross-examine petitioner with his prior convictions if he testified. (R. 73 at 7-11.)

14

conference, the court explained the rule regarding cross-examination of a defendant with his prior convictions. (Apr. 13, 2009 Hr'g Tr. [R. 103] at 9-10.) This discussion made clear that defendant had the right to testify, but that if he did so his prior convictions could be admitted as part of the government's cross-examination.[9]

### g. Failure to Explain Rule 43

Petitioner next argues that counsel failed to explain that Fed. R. Crim. P. 43 required his presence for all trial proceedings, and that counsel failed to object to proceedings conducted without his presence. As discussed above, petitioner fails to identify any prejudice arising out of his absence from the few proceedings so conducted.

### h. Peremptory Strikes

Petitioner contends that his lawyers failed to explain to him his personal right to exercise peremptory strikes and failed to strike the three jurors he instructed them to remove. As discussed above, a represented defendant has no right to personally strike jurors, so counsel did not perform deficiently by failing to tell petitioner he had such a right.

In his affidavit, petitioner explains why he wanted jurors 3, 19, and 32 struck, but he fails to establish any prejudice based on counsel's failure to follow his directive. Petitioner avers:

> I thought I recognized [Juror #19] as being someone I knew or was familiar with through acquaintances or associates of mine (not all of whom were on friendly terms); I also observed two other male potential Jurors giving me hard, evil stares [Juror #3 and Juror #32]; and, as [an] additional reason why I did NOT want [Juror #3] on my Jury, he lived "near" where gunshots were fired, near the Questions nightclub, which he may have perceived as a threat to himself/safety.

(Adrian Harper Aff. ¶ 14.) The record plainly refutes petitioner's claims. I asked the jury panel

---

[9]Petitioner was also advised about the possibility of obstruction points under the advisory sentencing guidelines if he testified falsely. (Apr. 7, 2009 Hr'g Tr. [R. 99] at 3; Oct. 9, 2009 Hr'g Tr. [R. 105] at 6.)

15

during voir dire if anyone knew petitioner, and no one did. (Trial Tr. at 9.) Petitioner's vague claim that he "thought" Juror #19 was "familiar" is insufficient. I told the jury that this case involved conduct occurring in the city of Milwaukee near the Questions Nightclub on North Avenue, then asked: "Does anybody live or work in that area such that they would be affected by the fact that the incident occurred there?" (Trial Tr. at 18.) Juror #3 responded that he lived near Questions, but he stated that this would not affect his ability to be fair. Petitioner's vague claim that Juror #3 gave him a "hard stare" is insufficient to overcome the juror's under oath promise to be impartial. Finally, Juror #32 was the alternate, and I excused him prior to deliberations. (Trial Tr. at 305-06.)[10]

###    i.    Research (Attorney Donovan)

Petitioner argues that Attorney Donovan failed to research the relevant facts and law so as to zealously represent him on appeal. As discussed herein, none of the claims petitioner now presents have merit, so he cannot demonstrate prejudice from Donovan's failure to raise them.

###    j.    Court Reporter

Petitioner argues that Donovan should have raised the violation of the Court Reporter Act on direct appeal. As indicated above, failure to comply with § 753(b) is reversible only if

---

[10]Although he does not raise the issue in his motion or memorandum, in his affidavit petitioner states that he tried to fire Burke and Mullins because they wanted him to accept a plea bargain rather than going to trial. (Adrian Harper Aff. ¶¶ 2-3.) Given the overwhelming strength of the government's evidence, it was entirely reasonable for counsel to recommend that petitioner resolve the case. Petitioner further avers that because he tried to fire them Burke and Mullins held a "grudge" against him, which caused them to want him to have an unfair jury. (Adrian Harper Aff. ¶ 18.) As indicated above, in order to prevail on an ineffective assistance claim, petitioner must identify specific acts or omissions; generalized assertions that his lawyers did not like him will not suffice.

16

the defendant can demonstrate prejudice, which petitioner makes no attempt to do. Nolan, 910 F.2d at 1559.

### k.     Presence

Petitioner argues that Donovan should have raised on direct appeal petitioner's right to be present. As discussed, petitioner fails to demonstrate any prejudice based on his absence from the two "sidebars" and two brief in-chambers discussions.

### l.     Jury List/Peremptory Strikes

Petitioner asserts the Donovan should have raised as plain error denial of his right to personally exercise peremptory strikes. Petitioner had no such right, so Donovan did not provide ineffective assistance by failing to argue that he did.

### m.     Confrontation

Petitioner contends that Donovan failed to raise on direct appeal his confrontation and cross-examination issues. For the reasons set forth above, petitioner cannot demonstrate prejudice from Donovan's failure to raise these issues.

### n.     Cautionary Instruction

Petitioner argues that Donovan failed to raise on direct appeal my refusal to give a special cautionary instruction regarding the testimony of Terrence Harper.[11] At trial, the defense argued that Terrence Harper received a benefit from the government in not being charged related to his involvement in these events. I ruled:

> It seems to me that the Government didn't charge Terrence Harper because they didn't believe that he committed an offense, and I don't think that that's -- that is a benefit of the type contemplated by this instruction. So I'm going to deny that

---

[11] Under Seventh Circuit Pattern Instruction 3.05, the jury is told to consider with "caution and great care" testimony from a witness who received benefits from the government.

17

> -- this request for Terrence Harper as -- I mean, you can argue his credibility, of course, and treat him like -- you know, you can treat him as any kind of a witness you want; but I don't think there's any special rules that should apply in this case.

(Trial Tr. at 221.) Petitioner does not even attempt to argue that this ruling was incorrect; therefore, he cannot show prejudice based on Donovan's failure to raise the issue.

### o. Petition for Certiorari

Petitioner argues that Donovan failed to timely file a petition for certiorari in the Supreme Court including all of his issues. The Supreme Court's docket shows that Donovan filed a petition for certiorari, which the Court denied on June 25, 2012. 133 S. Ct. 45 (2012). Because the issues petitioner now raises lack merit, Donovan did not provide ineffective assistance by failing to include them in the petition.

### 5. Denial of Assistance of Counsel

Finally, petitioner argues that he has been denied the right to the assistance of counsel in presenting his § 2255 motion. "A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel." Oliver v. United States, 961 F.2d 1339, 1343 (7th Cir. 1992).[12] Under 18 U.S.C. § 3006A(a)(2), the district court may appoint counsel for a § 2255 petitioner if "the interests of justice so require." The court must appoint counsel if it determines that an evidentiary hearing is required to decide the motion, Rule 8(c) of the Rules Governing Section 2255 Proceedings, or if counsel is necessary for effective discovery, Rule 6(a) of the Rules Governing Section 2255 Proceedings. Because petitioner's motion fails to survive Rule 4 screening, counsel is not required, and because petitioner is able to articulate his claims, the claims are relatively straightforward, and the

---

[12] The Supreme Court cases petitioner cites on this issue involved state collateral proceedings, not § 2255. E.g., Martinez v. Ryan, 132 S. Ct. 1309 (2012).

18

claims lack merit, the interests of justice do not support the discretionary appointment of counsel.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that petitioner's motion for appointment of counsel is **DENIED**.[13]

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 28th day of May, 2013.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[13] Petitioner also seeks permission to proceed in forma pauperis, but because § 2255 motions require no filing fee this request is moot.